IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

J.R. ROWAN, INC.,

      Plaintiff,

v.                                   No. 2:23-cv-01119-JCH/GJF

CHEVRON U.S.A. INC., and
CHEVRON MIDCONTINENT, L.P.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On April 28, 2025, Plaintiff J.R. Rowan, Inc., ("Plaintiff" or "JR Rowan") filed a *Motion for Leave to Amend Complaint* (ECF No. 35), seeking to file a second amended complaint approximately nine months after the deadline for amending pleadings and eight weeks after substituting its counsel in the case. Defendants Chevron U.S.A., Inc., and Chevron Midcontinent, L.P., (collectively, "Chevron" or "Defendants") oppose the motion based on untimeliness, lack of good cause shown, and prejudice. The Court, having considered the motion, briefs, proposed second amended complaint, the record, and the applicable law, will grant the motion to amend.

### I.    BACKGROUND

#### A.  First Amended Complaint

Plaintiff filed suit against Chevron on November 7, 2023, in New Mexico's Fifth Judicial District Court, (Compl. 1, ECF No. 1-1), and Defendants removed the case, (Notice of Removal, ECF No. 1). JR Rowan filed its First Amended Complaint ("FAC") on April 11, 2024, (Am. Compl., ECF No. 8), which Chevron answered on May 9, 2024, (Answer, ECF No. 11).

The following are the facts alleged in the FAC that are pertinent to the motion to amend. JR Rowan is a Texas corporation with a leasehold interest in certain lands in Eddy County, New Mexico, under an oil and gas lease dated March 10, 1978 (the "Subject Lease"). (FAC 1-2, ECF No. 8.) Plaintiff and other working interest owners entered a Joint Operating Agreement (the "1981 JOA") dated February 26, 1981, covering all depths underlying the W/2 of Section 15. (*Id.* at 5.) Under the 1981 JOA, Plaintiff holds a .521% working interest in the W/2 of Section 15. (*Id.*)

On April 9, 1981, JR Rowan and others executed a Supplemental Declaration of Unitization, pooling certain oil and gas rights and treating drilling or production from any part of the W/2 of Section 15 (from the surface to the base of the Morrow formation) as production from the Subject Lease. (*Id.* at 3.) In August 1993, lessees other than Plaintiff owning oil and gas leasehold interests underlying the W/2 of Section 15 signed an Amendment to Declaration of Unitization and Supplements (the "Amendment"), the full extent to which Plaintiff did not agree. (*Id.* at 4-5.) The Amendment limited the depth covered for oil, gas, casinghead gas, and other liquid hydrocarbons development to the formations between the top of the Wolfcamp formation and the base of the Morrow formation. (*See id.* at 4.) In contrast, Plaintiff only agreed to amend the Declaration of Unitization as to those depths for the production of gas; but for oil, casinghead gas, and other liquid hydrocarbons, the unitized lands encompassed all depths from the surface to the base of the Morrow formation. (*See id.* at 4-5.)

Although Defendants have continually recognized Plaintiff's leasehold interest and the Subject Lease is in full force and effect, Defendants purported to release the Subject Lease and acquired a new lease dated August 1, 2012, (the "Chevron Lease"), covering the same lands as the Subject Lease. (*See id.* at 6.) Since on or about November 1, 1981, several wells have been drilled on the subject lands. (*See id.* at 2-3.) As relevant here, in 2019, Chevron completed several wells,

including the CB SO 15 22 004 1H, 2H, and 3H wells in portions of Sections 15 and 22, in the Wolfcamp formation (collectively, the "CB SO Wells"). (*See id.* at 3, 6.)

According to the FAC, JR Rowan has a right to participate in the CB SO Wells, preserved by the Subject Lease being in full force and effect and by the 1981 JOA, even should the Subject Lease be found to be expired. (*Id.* at 6.) Chevron, however, failed to recognize Plaintiff's right to participate in the CB SO Wells. (*Id.* at 7.)

Plaintiff asserted in the FAC six causes of action against Defendants. First, Plaintiff brought a quiet title action (Count 1), claiming the Subject Lease is in full force and effect, and Defendants' claim under the Chevron Lease constitutes a cloud on Plaintiff's leasehold estate. (*Id.*) Plaintiff additionally sought a full accounting (Count 2) of revenues, costs, and expenses related to the CB SO Wells, asserting entitlement to participate in these wells. (*Id.*) Plaintiff also alleges a breach of contract claim (Count 3), contending that Defendants breached the Supplemental Declaration of Unitization by not recognizing Plaintiff's leasehold interest to the pooled oil, casinghead gas, and other liquid hydrocarbons produced from the surface to the base of the Morrow formation. (*Id.* at 8.) In Count 4, Plaintiff claimed Defendants breached the 1981 JOA by failing to provide written notice of proposed operations for the CB SO Wells. (*Id.* at 8-9.) Plaintiff asserted a conversion claim in Count 5 based on Defendants purported wrongful exercise of control over proceeds from the CB SO Wells, to the exclusion of or inconsistent with Plaintiff's rights. (*Id.* at 9.) In the sixth and final count, Plaintiff brought an unjust enrichment claim in which it alleged that Defendants are withholding monies owed to Plaintiff from the oil and gas production from the CB SO Wells. (*Id.* at 9-10.) In addition to an accounting and damages, Plaintiff sought to quiet title in its leasehold estate to remove the cloud upon the title and for orders to determine the Subject

Lease be in full force and effect and to find that Defendants have no right, title or interest in the subject lands by virtue of the Chevron Lease. (*Id.* at 10.)

### B. Procedural History

The Court's initial Scheduling Order set a July 15, 2024, deadline to amend the complaint. (Order 1, ECF No. 18.) On November 8, 2024, the parties jointly filed a motion to modify the scheduling order, noting that the parties "have worked diligently to prepare their respective cases but need additional time" to prepare. (Mot. 2, ECF No. 20.) The Court granted the motion, extended discovery deadlines, and set trial for January 20, 2026. (*See* Order, ECF No. 21; Notice, ECF No. 22).

Chevron responded to Plaintiff's first set of interrogatories, requests for production, and requests for admission on December 13, 2024. (Certificate of Service, ECF No. 24.) Chevron served its discovery requests on February 25, 2025. (Certificate of Service, ECF No. 27).

On March 3, 2025, following approval by the Court, Plaintiff substituted counsel in the case. (Order, ECF No. 29.) The next day, JR Rowan served its expert disclosures on Chevron. (Certificate of Service, ECF No. 30.) On March 17, 2025, the parties filed a *Second Joint Motion to Modify Scheduling Order* (ECF No. 31). New counsel requested additional time to prepare the case, and the parties noted they have diligently worked to prepare their respective cases. (*Id.* at 2.) The Court granted the motion. (Order, ECF No. 32). According to the new scheduling order, Plaintiff's expert reports were due May 19, 2025; Defendants' expert reports were due June 20, 2025; discovery ends August 29, 2025; discovery motions are due on September 15, 2025, while dispositive motions are due September 30, 2025. (*Id.* at 1.)

Because of the change in discovery deadlines, and on motion by the parties, on April 2, 2025, the Court vacated the trial setting. (Order, ECF No. 34.) A new trial date has yet to be

scheduled. On April 28, 2025, JR Rowan served its objections and responses on Chevron. (Certificate of Service, ECF No. 36.)

### C. Proposed Second Amended Complaint

The same day, on April 28, 2025, JR Rowan filed its motion for leave to file its proposed second amended complaint ("SAC") and attached the SAC as Exhibit 1. (Pl.'s Mot., ECF No. 35.) According to Plaintiff, the SAC narrows the issues by removing its claims related to the leasehold interest, and instead, focuses on its contractual working interest under the 1981 JOA. (*Id.* at 1.)

Factually, in the SAC, Plaintiff removed allegations that it only agreed to a limited amendment of the Declaration of Unitization. (*Compare* SAC, ECF No. 35 at 8-18 of 36, *with* FAC 4-5, ECF No. 8; *see also* Pl.'s Ex. 2, ECF No. 35 at 26-27 of 36.) Plaintiff added allegations that Chevron and other working interest owners entered into a second Joint Operating Agreement dated April 1, 2018, which JR Rowan was excluded from, despite having a contractual interest under the 1981 JOA. (*Compare* SAC 4, ECF No. 35 at 11 of 36, *with* FAC, ECF No. 8.) Plaintiff also alleges in the SAC that Chevron cannot unilaterally terminate JR Rowan's existing contractual working interest under the 1981 JOA by compulsory pooling or by entering a subsequent JOA. (SAC 5, ECF No. 35 at 12 of 36.) According to Plaintiff, Defendants are wrong to believe that contractual working interest owners are not considered "owners" under New Mexico's forced pooling statute, NMSA 1978 § 70-2-17. (*Id.*)

In addition to the above changes to the SAC, Plaintiff proposes the following amendments to the causes of action. In Count 1, Plaintiff seeks to remove its quiet title claim as to the Subject Lease and leasehold interest and replace it with a claim to quiet equitable title to Plaintiff's contractual working interest under the 1981 JOA. (*Compare* SAC 6, 9, ECF No. 35 at 13, 16 of 36, *with* FAC 7, ECF No. 8.) In Count 2, Plaintiff again seeks an accounting of all revenues, costs,

and expenses from the CB SO Wells, but by virtue of its contractual interest under the 1981 JOA, not the leasehold interest. (*Compare* SAC 6-7, ECF No. 35 at 13-14 of 36, *with* FAC 7, ECF No. 8.) In the SAC, Plaintiff wants to replace the breach of contract claim based on the Unitization Agreement in Count 3 with a claim for Declaratory Judgment under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. (*Compare* SAC 7, ECF No. 35 at 14 of 36, *with* FAC 8, ECF No. 8.) According to the SAC, Plaintiff seeks the following declarations: (1) Plaintiff has a valid and subsisting contractual interest under the 1981 JOA to all oil and gas produced from all depths in the contract area; (2) New Mexico's Oil Conservation Division ("NMOCD") has no power or authority to terminate or otherwise affect the legal and equitable title held by persons or entities in lands subject to a compulsory pooling order; (3) contractual working interest owners are "owners" under NMSA 1978 § 70-2-17; and (4) NMOCD's forced pooling Order No. R-14752, Case No. 16152, did not affect or terminate Plaintiff's right to participate in the CB SO Wells under the 1981 JOA. (SAC 7, ECF No. 35 at 14 of 36.) Finally, the SAC amends the requested relief to reflect the above changes. (*See* SAC 9-10, ECF No. 35 at 16-17 of 36.) The SAC continues to assert, like the FAC, a fourth cause of action for breach of contract based on the 1981 JOA, a fifth cause of action for conversion, and a sixth cause of action for unjust enrichment. (*Compare* SAC 7-9, ECF No. 35 at 14-16, *with* FAC 8-10, ECF No. 8.)

## II.    STANDARD

Generally, a court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Id.* at 1204 (internal quotations omitted). Leave sought

must be freely given in the absence of any justifiable reason for the denial of the motion, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

After a scheduling order deadline has passed, a party seeking leave to amend must not only satisfy Rule 15(a)'s standard but also demonstrate good cause for seeking modification under Rule 16(b)(4). *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014). Rule 16(b)(4)'s good-cause standard means showing that the scheduling deadlines cannot be met despite the plaintiff's diligent efforts. *Gorsuch*, 771 F.3d at 1240. A court may generally find good cause when the plaintiff has been diligent, where the need for more time was not foreseeable or the party's fault, and when refusing to grant the amendment would create a substantial risk of unfairness to the party. *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Mere carelessness does not satisfy the diligence requirement. *Id.* at 989. Although prejudice is relevant to the inquiry, the focus is on the moving party's reasons for seeking the change. *See id.* at 988. The Tenth Circuit has "noted the 'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16." *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (quoting *Minter*, 451 F.3d at 1205 n. 4).

## III.    ANALYSIS

Plaintiff asks the Court to use its discretion to freely give it leave to amend because amendment is not the result of undue delay or bad faith and will not prejudice Defendants. As for good cause, Plaintiff argues that substituted counsel joined the case after the deadline to amend had passed and new counsel diligently reviewed the case and determined that amendment was beneficial. Chevron opposes the motion, contending that Plaintiff's substitution of counsel is not

sufficient justification to satisfy the good-cause requirement under Rule 16(b)(4) and that it will be prejudiced by the amendment. Chevron argues that Plaintiff has not shown diligence, because it could and should have brought the claim arising from the 1981 JOA contractual working interest before the Scheduling Order deadline passed, as Plaintiff would have been aware of the factual basis at that time.

Having considered the record, the Court finds that Plaintiff has satisfied the standards for both Rules 15(a) and 16(b)(4) and will allow amendment. There is no evidence or argument of bad faith, repeated failure to cure deficiencies by amendments, or futility of amendment. Substituted counsel entered the case after the July 15, 2024, deadline. While the deadline for amending pleadings passed approximately nine months prior to the most recent request to amend, new counsel moved to amend shortly after entering the case and after diligently reviewing the claims and status of the case. Plaintiff seeks to streamline the litigation. Most significantly, discovery is ongoing. The trial was vacated and is not yet rescheduled. The Court finds that the delay is not undue and that there is good cause to modify the scheduling order to allow amendment.

As for potential prejudice, Chevron argues that Plaintiff is seeking to change its theories of liability, which will inject new legal theories immediately before the parties' expert report deadlines and will require further merits discovery. The Court is unconvinced Chevron will be prejudiced by the proposed amendments. The FAC was already partially premised on the 1981 JOA. (*See*, *e.g.*, FAC 5 ¶ 25, ECF No. 8 ("Pursuant to the JOA, Plaintiff is the owner of approximately .521% working interest underlying the W/2 of Section 15."); *id.* at 6 ¶ 30 ("In addition to the Subject Lease being in full force and effect, Plaintiff's right to participate in wells drilled in the W/2 of Section 15 is preserved by the JOA, even if the Subject Lease is found to have expired.").) The FAC contained a breach of contract claim based on the contractual

obligations under the 1981 JOA. (*Id.* at 8-9 ¶¶ 41-46.) Chevron appears to have been aware of JR Rowan's potential theory of relief under the 1981 JOA as early as April 13, 2023. (*See* Pl.'s Ex. A, ECF No. 41-1 (letter from defense counsel).) Much of the already completed discovery involved the 1981 JOA. (*See* Pl.'s Ex. B, ECF No. 41-2 at 10-11, 13, 16-17, 20-21 of 22.) The SAC thus is not injecting brand new legal theories untethered to the current facts, claims, and discovery. The SAC also removes the contested leasehold issue, narrowing the scope of the case. Burdensome additional discovery is not likely to result from the amendment.

Moreover, any potential prejudice can be cured. Should Chevron desire additional discovery, there is still time to request additional interrogatories within the current discovery deadlines. With respect to the expert report issue, Plaintiff's deadline passed, and Plaintiff did not request additional experts. Should Chevron need additional time for preparation of its expert report based on the SAC, Chevron may request an extension of time. Trial has not yet been rescheduled, so expansion of discovery would not affect a pending trial date. As the Tenth Circuit noted, the expenditure of time, money, and effort on litigation alone does not invariably amount to prejudice. *Bylin*, 568 F.3d at 1230-31. For the foregoing reasons, the Court finds that allowing amendment will not unduly prejudice Chevron.

"Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Plaintiff has diligently litigated this case and new counsel moved to amend shortly after entering the case. The SAC will not dramatically alter the claims in the case and discovery is still open. The Court finds that amendment in this case will balance the policy to consider the merits of the case while ensuring that Defendants suffer no prejudice. *See Calderon v. Kansas Dept. of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir.

1999) ("The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits.").

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Leave to Amend Complaint* (**ECF No. 35**) is **GRANTED**. Plaintiff must file its proposed second amended complaint **within seven days** of the date of filing of this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE